UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

AMINA MOHAMED JAMA, *et al.*,
      Plaintiffs,

                                              **Case No. 2:25-cv-21**
   v.                                  **Judge Edmund A. Sargus, Jr.**
                                              **Magistrate Judge Chelsey M. Vascura**

PEGGY PETROVICH, *et al.*,
      Defendants.

## OPINION AND ORDER

This matter is before the Court on Defendants' Motion to Dismiss. (ECF No. 10.) Plaintiffs filed a response in opposition (ECF No. 16) and Defendants filed a reply (ECF No. 17). For the reasons stated below, the Court **GRANTS in part** and **DENIES in part** Defendants' Motion.

## BACKGROUND

This case concerns the issue of how to determine a visa applicant's age for family-preference status under the Child Status Protection Act, Pub. L. No. 107-208, 116 Stat. 927 (codified in the Immigration and Nationality Act as 8 U.S.C. §§ 1151, 1153, 1154, 1157, 1158) after the applicant's parent becomes a naturalized citizen. (*See* Compl., ECF No. 1.)

### I.     Immigrant Visa Application Process

An overview of the family-based immigrant visa application process is necessary to understand the background of this case. The process generally progresses in two stages. A U.S. citizen or lawful permanent resident first files a Form I-130 petition on behalf of a noncitizen with U.S. Citizenship and Immigration Services ("USCIS"). 8 U.S.C. § 1154(a). If USCIS approves the petition, it forwards the petition to the National Visa Center ("NVC"), which operates under the U.S. Department of State ("State Department"). *Id.* § 1154(b). At that point, the noncitizen is assigned a family-preference category, which determines when an immigrant

visa will be available to him or her. *Id.* Because the United States places annual numerical limits on immigrant visas, applicants must wait until a visa becomes available in their family-preference category before taking the next step. *See id.* § 1153(a). Once a visa is available in the applicant's family-preference category, the noncitizen submits a visa application to the State Department and attends an interview at a U.S. Embassy, where the visa application is either approved or denied. *Id.* §§ 1201–02.

Relevant to this lawsuit are the following family-preference categories:

- "Immediate relatives": spouses, unmarried child under 21 years of age, or parents of a U.S. citizen;

- F1: unmarried children (21 years or older) of a U.S. citizen; and

- F2A: spouses and children (unmarried and under 21 years of age) of lawful permanent residents.

*Id.* §§ 1151(b)(2)(A)(i), 1153(a)(1), 1153(a)(2)(A).

Each month, the State Department publishes a "Visa Bulletin," which identifies the availability of visas based on an applicant's family-preference category and priority date (i.e., the date the petition was submitted).[1] In March 2026, individuals in the F2A category were eight years ahead of individuals in the F1 category, meaning F1 category applicants could have to wait eight years longer to apply for a visa than F2A applicants. "Immediate relatives" have the highest preference and do not have to wait to apply for a visa application. *Scialabba v. Cuellar de Osorio*, 573 U.S. 41, 47–48 (2014).

## II.     Factual and Procedural History

On July 28, 2017, Plaintiff Amina Mohamed Jama, a lawful permanent resident, filed a Form I-130 petition on behalf of her son Abdihakim Mohamed Abdirahman, a Kenyan native

---

[1] *See* U.S. Dep't of State, *The Visa Bulletin*, https://travel.state.gov/content/travel/en/legal/visa-law0/visa-bulletin.html [https://perma.cc/9HDB-WCMR].

living in Rwanda. (Compl., ¶¶ 7, 27.) USCIS approved the petition in August 2019. (*Id.* ¶ 28.)

When Ms. Jama submitted the petition, Mr. Abdirahman was 19 years old, and when USCIS

approved it, he was 21 years old. (*Id.* ¶¶ 29, 36.) After the petition was granted, the NVC issued

Mr. Abdirahman a family-preference category of F2A, a minor child of a lawful permanent

resident, and deemed Mr. Abdirahman "documentarily qualified." (*Id.* ¶¶ 30–31.)

On November 17, 2022, Ms. Jama became a U.S. citizen. (*Id.* ¶ 32.) Mr. Abdirahman was

24 years old then. (ECF No. 10, PageID 49.) Without notice, Mr. Abdirahman's category was

changed from F2A to F1, an adult child of a U.S. citizen. (Compl., ¶ 35.) Plaintiffs contend that

Mr. Abdirahman's category should have changed from F2A to "immediate relative" because Mr.

Abdirahman should be considered under 21 years old pursuant to the Child Status Protection Act

("CSPA"), 8 U.S.C. § 1153(h)(1). (*Id.* ¶ 37.) They assert that Congress enacted the CSPA to

protect children from aging out during the visa application process by establishing a formula to

calculate a child's age for immigration purposes, even if the child's biological age is over 21. (*Id.*

¶¶ 16–17.)

In January 2025, Plaintiffs filed this lawsuit "to compel Defendants, and those acting

under them, to properly apply" the CSPA to Mr. Abdirahman and reclassify him as an

"immediate relative." (*Id.* ¶¶ 1, 44.) Plaintiffs sue the following Defendants in their official

capacities: the Director of the NVC, Peggy Petrovich; the Deputy Chief of Mission of the U.S.

Embassy in Kigali, Rwanda, Rachel Okunubi; the Director of USCIS, Joseph Edlow; the

Secretary of the State Department, Marco Rubio; the Secretary of the Department of Homeland

Security ("DHS"), Markwayne Mullin; and the U.S. Attorney General and head of the U.S.

Department of Justice ("DOJ"),  Pamela Bondi.[2] (*Id.* ¶¶ 8–13.) Plaintiffs seek declaratory review

---

[2] Plaintiffs' Complaint names Peggy Petrovich, John Armiger, Ur Jaddou, Antony Blinken, Alejandro Mayorkas, and Merrick Garland in their official capacities as Defendants. Under

and a "writ in the nature of mandamus." (*See id.*) Their single cause of action is for a judgment under the Declaratory Judgment Act, 28 U.S.C. § 2201(a), that Mr. Abdirahman's family-preference category "should be properly classified as an immediate relative under 8 U.S.C. § 1154." (*Id.* ¶¶ 41–45.)

On March 3, 2025, Mr. Abdirahman appeared at the U.S. Embassy in Kigali, Rwanda, and applied for an immigrant visa. (Rosales Dec., ECF No. 10-1, PageID 91.) The consular officer interviewed him and determined that he was properly classified in family-preference category F1. (*Id.* PageID 91–92.) The consular officer informed Mr. Abdirahman that he is classified as an F1 applicant and that a visa is not yet available in that category and" refused the visa application" under 8 U.S.C. § 1201(g). (*Id.*)

On March 28, 2025, Defendants moved to dismiss Plaintiffs' Complaint in this lawsuit. (ECF No. 10.) Plaintiffs filed a response in opposition (ECF No. 16) and Defendants filed a reply (ECF No. 17).

## ANALYSIS

Defendants move to dismiss the case for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), alleging Plaintiffs lack standing to bring their claims. (Mot., ECF No. 10, PageID 50–51.) They also move to dismiss under Federal Rule of Procedure 12(b)(6) for failure to state a claim. (*Id.*, PageID 51.) The Court addresses each below.

**I.     Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(1)**

Defendants argue that Plaintiffs lack standing to (1) challenge the actions of Defendants DHS and USCIS and (2) challenge a consular officer's refusal of an immigration visa. (*Id.* PageID 68–73).

---

Federal Rule of Civil Procedure 25(d), the individuals who currently hold these offices have been automatically substituted.

**A.     Standard of Review**

A court may dismiss an action under Rule 12(b)(1) when the court lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). A motion to dismiss for a lack of subject matter jurisdiction falls into two general categories: facial attacks and factual attacks. *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). When a defendant challenges a complaint on its face under this rule, as Defendants do here, the defendant challenges "the sufficiency of the pleading itself." *Id.* "On such a motion, the court must take the material allegations of the petition as true and construed in the light most favorable to the nonmoving party." *Id.* The plaintiff has the burden of proving subject matter jurisdiction to survive a Rule 12(b)(1) challenge. *Madison-Hughes v. Shalala*, 80 F.3d 1121, 1130 (6th Cir. 1996).

**B.     DHS and USCIS**

Defendants argue that the Court should dismiss the claim against Defendants DHS, and its agency USCIS, because the Court lacks authority under Article III of the Constitution to decide Plaintiffs' claim against those Defendants. (*Id.* PageID 70.) Defendants contend that Plaintiffs "have received the relief sought by these Defendants" because USCIS approved Plaintiffs' Form I-130, and then transferred it to the NVC, thereby completing DHS's and USCIS's role in the process. (*Id.* PageID 70–71.)

Plaintiffs do not respond to Defendants' argument regarding DHS and USCIS, thereby waiving their opposition to dismissal of their claim against those Defendants. *See Humphrey v. U.S. Att'y Gen.'s Off.*, 279 F. App'x 328, 331 (6th Cir. 2008) (citing *Resnick v. Patton*, 258 F. App'x 789, 793, n.1 (6th Cir. 2007) (finding that a party waives arguments by not addressing them in opposition to a motion to dismiss in the district court)). Even if Plaintiffs had responded, Defendants' argument is well taken.

To have standing to sue DHS and USCIS, Plaintiffs must show an injury caused by DHS and USCIS that can be redressed by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). "If 'the plaintiff does not claim to have suffered an injury that the defendant caused and the court can remedy, there is no case or controversy for the federal court to resolve.'" *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (quoting *Casillas* v. *Madison Ave. Assocs., Inc.*, 926 F.3d 329, 333 (7th Cir. 2019) (Barrett, J.)).

DHS and USCIS did not cause and cannot redress Plaintiffs' alleged injury. USCIS approved Ms. Jama's I-130 Form and transferred the approved petition to the State Department. The State Department, through the NVC and the U.S. Embassy in Kigali, was responsible for classifying Mr. Abdirahman's family-preference category. Thus, it was the NVC, the U.S. Embassy, and the State Department—not DHS or USCIS—that directly caused Plaintiffs' alleged injury. *See Al-Gharawy v. U.S. Dep't of Homeland Sec.*, 617 F. Supp. 3d 1, 10 (D.D.C. 2022) (dismissing claims against DHS, USCIS, and their officials in an immigration case because they could not remedy the plaintiffs' injury); *Salem v. Noem*, No. 24-cv-11522, 2025 WL 1567864, at *4 (N.D. Ill. June 3, 2025) (same).

Similarly, the DOJ had no operational role in the reclassification or denial of Mr. Abdirahman's visa and cannot redress Plaintiffs' alleged injury. *See Dey v. Rubio*, No. CV 24-00944 (AHA), 2025 WL 2320364, at *3 (D.D.C. Aug. 11, 2025) (dismissing claims against the Attorney General and DOJ in an immigration case because they could not remedy the plaintiffs' injury). Thus, the claim against the U.S. Attorney General and the DOJ should also be dismissed.

Plaintiffs lack standing to pursue claims against DHS, USCIS, and the DOJ. Accordingly, Defendants' Motion to dismiss the claim against DHS and USCIS is **GRANTED**. Additionally, the Court **DISMISSES** Plaintiffs' claim against the DOJ sua sponte.

C.      **Standing to Challenge a Consular Officer's Refusal of an Immigration Visa**

Defendants argue that Ms. Jama cannot establish standing to bring this suit because she has not demonstrated an injury in fact. (Mot., PageID 71.) Defendants argue that Ms. Jama's sole basis for injury is based on "the putative right of a third party—her adult son." (*Id.*) They argue that third parties cannot usually assert the rights of others, especially in this case, where Mr. Abdirahman himself cannot sue as a noncitizen living abroad because there is no "judicially cognizable interest relating to the grant or denial of a visa to a noncitizen abroad." (*Id.* PageID 72–73.)

Defendants' arguments conflict with the Supreme Court, which has stated that "a person's interest in being united with his [or her] relatives is sufficiently concrete and particularized to form the basis of an Article III injury in fact." *Trump v. Hawaii*, 585 U.S. 667, 698 (2018). And that "an American individual who has 'a bona fide relationship with a particular person seeking to enter the country . . . can legitimately claim concrete hardship if that person is excluded.'" *Id.* at 698–99 (quoting *Trump v. Int'l Refugee Assistance Project*, 582 U.S. 571, 583 (2017)). Defendants conflate standing with Supreme Court decisions considering whether an individual has a constitutional right to the admission of a noncitizen into the country. *See Kleindienst v. Mandel*, 408 U.S. 753 (1972); *Dep't of State v. Munoz*, 602 U.S. 899 (2024); *Kerry v. Din*, 576 U.S. 86 (2015). Unlike those cases, Ms. Jama is not attempting to assert a constitutional right.

Numerous courts have found that a parent who petitions for their child to apply for an immigrant visa has standing to challenge a family-preference category classification. *See Germai R. v. Petrovich*, No. 24-cv-4125 (KMM/ECW), 2025 WL 1685768, at *15 (D. Minn. June 16, 2025) (denying a motion to dismiss because numerous courts "have found parents have standing where they have filed petitions on behalf of their noncitizen children and assert a right to have a

7

preference category determined in accordance with the law"); *Fantaye v. Blinken*, No. 24-3125, 2025 WL 1558472, at *3 (E.D. Pa. June 2, 2025) (finding standing because a U.S. citizen petitioner "is not asserting third-party standing on behalf of her son . . . [r]ather, she is seeking to vindicate her own rights as a visa petitioner"); *Dekovic v. Tarango*, No. 23-cv-02728-REB, 2024 WL 4346415, at *10 (D. Colo. Sept. 30, 2024), *reversed sub nom. on other grounds*, *Dekovic v. Rubio*, No. 24-1431, 2026 WL 668425 (10th Cir. Mar. 10, 2026) (finding that plaintiffs had standing to sue when the NVC reclassified the noncitizen child's petition to F1 after the mother's naturalization).

Ms. Jama filed a Form I-130 petition for her son, and as a result, has a direct and legally cognizable interest in his visa process. Upon Mr. Abdirahman's alleged improper reclassification, Ms. Jama suffered an injury in fact, giving her standing to assert her claims. Accordingly, Defendants' Motion to Dismiss on the basis that Ms. Jama lacks standing is **DENIED**.

## II.     Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(6)

Defendants move to dismiss Plaintiffs' complaint under Rule 12(b)(6) because (1) there are no visas available to Mr. Abdirahman; (2) review of Mr. Abdirahman's visa refusal is unavailable under the Administrative Procedure Act because the consular officer fulfilled his or her statutory duty by refusing Mr. Abdirahman's visa application under 8 U.S.C. § 1201(g); (3) the doctrine of consular nonreviewability precludes judicial review; and (4) Mr. Abdirahman's family-preference category is proper under the CSPA. (Mot., PageID 73–89.)

Defendants' first two arguments miss the mark because they focus on the visa refusal, rather than Mr. Abdirahman's alleged misclassification. Defendants essentially argue that Plaintiffs fail to state a claim because there is no relief for Mr. Abdirahman due to the refusal of his visa application because no visas were available for him in his family-preference category.

Plaintiffs bring this lawsuit to challenge Mr. Abdirahman's family-preference category, which prevents him from getting a visa. The fact that no visas are available to him is the very harm that Plaintiffs seek to prevent and Defendants cannot rely on that outcome as a ground for dismissal. Thus, Plaintiffs' first two arguments are unavailing. The Court addresses Defendants' two remaining arguments below.

### A. Standard of Review

Under Rule 12(b)(6), Plaintiffs must satisfy the pleading requirements set forth in Federal Rule of Civil Procedure 8(a), which requires a pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Accordingly, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (clarifying the plausibility standard from *Twombly*, 550 U.S. at 556). Furthermore, "[a]lthough for the purposes of a motion to dismiss [a court] must take all of the factual allegations in the complaint as true, '[the court is] not bound to accept as true a legal conclusion couched as a factual allegation.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555) (internal quotations omitted).

### B. Consular Nonreviewability

Because visa adjudication is the within the domain of the legislative and executive branches of government, the doctrine of consular nonreviewaibility generally prohibits "judicial review of a consular officer's denial of a visa." *Munoz,* 602 U.S. at 908; *see also Baaghil v. Miller*, 1 F.4th 427, 432 (6th Cir. 2021).

9

Defendants argue that Plaintiffs' Complaint should be dismissed because consular nonreviewability bars judicial review of the Complaint. (Mot., PageID 77.) Plaintiffs contend that consular nonreviewability is inapplicable because they are not challenging the refusal of Mr. Abdirahman's visa and further argue that the refusal cannot be barred by consular nonreviewability because it is not a final decision. (ECF No. 16, PageID 121–25.)

Plaintiffs' first argument is well taken. Plaintiffs do not challenge the denial of the visa— they initiated this lawsuit before any refusal took place, nor does their Complaint allege that a denial has occurred. Rather, Plaintiffs challenge Mr. Abdirahman's reclassification to an F1 family-preference category. Thus, consular nonreviewability is inapplicable here. *See Teles de Menezes v. Rubio*, 156 F.4th 1, 11 (1st Cir. 2025) (holding that the doctrine of consular nonreviewability does not apply where the plaintiff is challenging a reclassification of a family-preference category rather a visa denial.)

Even if Plaintiffs' Complaint could be construed as an indirect challenge to a consular decision, consular nonreviewability does not bar Plaintiff's claim because Mr. Abdirahman's March 2025 visa refusal was not final. Courts have frequently found that consular nonreviewability is inapplicable when a visa refusal is not final. *Gonzalez v. Offutt*, No. 1:23-CV-547, 2024 WL 2847962, at *3–4 (S.D. Ohio June 5, 2024) (McFarland, J.); *Igal v. U.S. Consulate Gen. in Johannesburg*, No. 2:23-CV-4160, 2024 WL 2882653, at *8 (S.D. Ohio June 7, 2024) (Jolson, M.J.); *Nine Iraqi Allies Under Serious Threat Because of Their Faithful Serv. to the United States v. Kerry*, 168 F. Supp. 3d 268, 292 (D.D.C. 2016); *Joorabi v. Pompeo*, 464 F. Supp. 3d 93, 100 (D.D.C. 2020); *Ebrahimi v. Blinken*, 732 F. Supp. 3d 894, 906–07 (N.D. Ill. 2024) (collecting cases).

Mr. Abdirahman's visa application was refused "because an F1 visa was not available to him based on his priority date." (Rosales Dec., PageID 92.) The consular officer informed him

10

that he "is classified as an F1 applicant and that a visa is not yet available in that category." (*Id.*) Thus, Mr. Abdirahman's visa refusal was not a final adjudication—he must instead wait until a visa becomes available for him in the F1 category. Accordingly, the doctrine of consular nonreviewability is inapplicable here.

### C. Child Status Protection Act

Defendants argue that Plaintiffs' Complaint should be dismissed because Mr. Abdirahman was properly classified as F1 based on the plain language of the CSPA and State Department guidance. (Mot., PageID 82–83.) Plaintiffs contend that Defendants' narrow reading of the statute "defies statutory text and undermines the core purpose of the [CSPA]." (ECF No. 16, PageID 125.)

The Immigration and Nationality Act defines "child" as an unmarried person under 21 years of age. 8 U.S.C. § 1101(b)(1). In 2002, Congress amended the Immigration and Nationality Act by unanimously passing the CSPA to prevent children from aging out during the visa-petition process due to long wait times. *Dekovic*, 2026 WL 668425, at *3; *see also Cuthill v. Blinken*, 990 F.3d 272, 276 (2d Cir. 2021); *Tovar v. Sessions*, 882 F.3d 895, 897 (9th Cir. 2018); *Teles de Menezes*, 156 F.4th 1, 5 (1st Cir. 2025).

Children generally fall into two categories under the CSPA: children of U.S. citizens and children of legal permanent residents. For children of U.S. citizens ("immediate relative" category), the CSPA freezes the age of the child on the date the I-130 petition was filed, meaning that the child will always remain in the "immediate relative" category, even if they are 21 or older. *Id.* § 1151(f)(1); *Scialabba*, 573 U.S. at 49. For children of legal permanent residents (F2A category), the CSPA calculates the child's age by subtracting the number of days the I-130 petition was pending from the child's biological age. *Id.* § 1153(h)(1). That is the age used to

determine the child's family-preference category. But what if the parent's status changes from legal permanent resident to U.S. citizen during the process? The CSPA states:

> **(f) Rules for determining whether certain aliens are immediate relatives**
>
>     . . .
>
>   **(2) Age on the parent's naturalization date**
>   In the case of a [visa petition] initially filed for an alien child's classification as [F2A], based on the child's parent being lawfully admitted for permanent residence, if the petition is later converted due to the naturalization of the parent, to a petition to classify the alien as an immediate relative . . . the determination [of whether the child meets the age requirement for immediate relatives] *shall be made using the age of the alien on the date of the parent's naturalization.*

*Id.* § 1151(f)(2) (emphasis added). Put simply, to determine whether the child becomes an "immediate relative," the child's age is determined by his or her age on the date of the parent's naturalization. *Id.* Thus, the question at the heart of this case is whether "age" in the statute refers to biological age or the CSPA-calculated statutory age.

The Sixth Circuit has not considered the meaning of "age" in § 1151(f)(2), but the First, Second, Ninth, and Tenth Circuits have thoroughly analyzed the statute, and all concluded that "age" in § 1151(f)(2) refers to the CSPA-calculated age. *Teles de Menezes v. Rubio*, 156 F.4th 1, 18 (1st Cir. 2025); *Cuthill v. Blinken*, 990 F.3d 272, 280 (2d Cir. 2021); *Tovar v. Sessions*, 882 F.3d 895, 901 (9th Cir. 2018); *Dekovic v. Rubio*, No. 24-1431, 2026 WL 668425, at *1 (10th Cir. Mar. 10, 2026). The Court finds the analyses in the Circuit decisions to be thorough, well-reasoned, and persuasive. The Circuit courts carefully examined the text of the CSPA, its statutory framework, prior versions of the Immigration and Nationality Act, and legislative history in reaching their decisions. This Court adopts the conclusions reached by all four Courts of Appeals which have addressed this same issue.

Defendants argue that "age" should be given its common, ordinary meaning to indicate biological age. (Mot., PageID 84–85). But the Court agrees with the Circuit courts that the word

"age" must be understood in context of all the provisions of the CSPA—not in isolation. *Teles de Menezes*, 156 F.4th at 13; *Cuthill*, 990 F.3d at 279; *Tovar*, 882 F.3d at 901; *Dekovic*, 2026 WL 668425, at *8; *see also Perez v. Bondi*, 160 F.4th 710, 715 (6th Cir. 2025) (stating that courts "should interpret statutes as a whole, giving effect to each word and making every effort not to interpret a provision in a manner that renders other provisions of the same statute inconsistent, meaningless, or superfluous").

The word "age" in the CSPA "is a part of an interlocking set of provisions, some of which employ the statutory age calculation." *Cuthill*, 990 F.3d at 279. The First Circuit explains these interlocking provisions and how they affect the meaning of "age": "[18 U.S.C.] § 1153(h)(1) supplies a modified formula for determining the age of an F2A beneficiary, and §1151(f)(2) applies, by its own terms, only to such beneficiaries. Thus, the 'age' of every beneficiary to whom § 1151(f)(2)'s conversion rule applies is already modified, namely, by § 1153(h)(1)." *Teles de Menezes*, 156 F.4th at 13.

Defendants support their argument that "age" must mean biological age by highlighting that § 1151(f)(1), the subsection that immediately precedes § 1151(f)(2), also uses the word "age" to mean biological age. (Mot., PageID 87.) For context, § 1151(f)(1) is the provision of CSPA that freezes the age of a child of a U.S. citizen, so the child always remains the "immediate relative" category. 18 U.S.C. § 1151(f)(1). The two subsections refer to different categories of child visa applicants, which are subject to different standards under the CSPA. It follows that "age" cannot have the same meaning for the different categories. The Second Circuit's analysis is compelling:

> [W]hile we agree that "age" in § 1151(f)(1) refers to biological age, we do not take it as a given that "age" in § 1151(f)(2) must have the same meaning. The reason § 1151(f)(1) indisputably refers to biological age is that it deals solely with immediate-relative beneficiaries and does not apply to F2A beneficiaries. In other words, the beneficiaries discussed in § 1151(f)(1) are not subject to the F2A-

> specific age calculation, so there is no way to calculate their age except biologically. But § 1151(f)(2) is an *exception* to the general rule laid out in § 1151(f)(1). And it is an exception that applies *only* to F2A beneficiaries, for whom "age" is calculated differently. All that § 1151(f)(1) proves is the uncontroversial proposition that the word "age" standing alone means biological age. It does not compel the conclusion that "age" has the same meaning in the F2A-specific context, where Congress expressly provided for an alternative calculation formula.

*Cuthill*, 990 F.3d at 280; *see also Teles de Menezes*, 156 F.4th at 14 ("[T]he proximity of the two provisions alone does not persuade us that their definitions of a beneficiary's "age" are the same, particularly in the face of a contrary instruction elsewhere in the same statutory scheme.").

Defendants also point out that § 1151(f)(2) does not reference § 1153(h)(1), the statute that provides the age-calculation formula, and vice versa. (Mot., PageID 86.) But, as the Ninth Circuit explained, the two subsections are linked because they both cross-reference § 1153(a)(2)(A). *Tovar*, 882 F.3d at 901. The section that provides the age-calculation formula, § 1153(h)(1), applies to immigrants as defined in § 1153(a)(2)(A): spouses and children of legal permanent residents (F2A category). The subsection at issue in this case, § 1151(f)(2), which only applies to applicants in the F2A category, also references § 1153(a)(2)(A). Thus, "[a]n explicit cross-reference is unnecessary when the three provisions are so closely related and form a cohesive whole." *Id.*; *see also Cuthill*, 990 F.3d at 280.

Defendants also argue that Congress could not have intended to shift "thousands" of applicants into the uncapped "immediate relative" category from the capped family-preference categories without being more explicit of their intent. (Mot., PageID 88.) But "[t]here is no dispute that Congress enacted the CSPA because it wanted to protect child beneficiaries from aging out of their age-dependent child visas." *Cuthill*, 990 F.3d at 284; *see also Dekovic*, 2026 WL 668425, at *12. Defendants' reading of the statute, however, would have the effect of penalizing a child for his or her parent becoming a naturalized citizen. In this case, Mr.

14

Abdirahman may have to wait eight years longer to apply for a visa because of his mother's naturalization. Such an illogical result cannot have been Congress's intent when it enacted the CSPA. *See Teles de Menezes*, 156 F. 4th at 17–18; *Cuthill*, 990 F.3d at 281–82; *Tovar*, 882 F.3d at 904; *Dekovic*, 2026 WL 668425, at *12.

The Court is unpersuaded by Defendants' arguments that "age" in § 1151(f)(2) refers to biological age. Accordingly, Defendants' Motion to Dismiss Plaintiffs' Complaint is **DENIED**.

## CONCLUSION

For the reasons stated above, (ECF No. 10) Defendants' Motion to Dismiss is **GRANTED in part** and **DENIED in part**. Plaintiffs' Complaint against DHS, USCIS, and the DOJ is **DISMISSED**. The Clerk is **DIRECTED** to terminate the following Defendants on the docket: (1) the Director of USCIS, Ur Jaddou (currently Joseph Edlow); Secretary of DHS, Alejandro Mayorkas (currently Markwayne Mullin); and U.S. Attorney General, Merrick Garland (currently Pamela Bondi). Plaintiff's Complaint against the following Defendants in their official capacities remains: Director of NVC, Peggy Petrovich; Deputy Chief of Mission of the U.S. Embassy in Kigali, Rwanda, John Armiger (currently Rachel Okunubi); and Secretary of the State Department, Antony Blinken (currently Marco Rubio).

This case remains open.

**IT IS SO ORDERED.**

3/26/2026
**DATE**

s/Edmund A. Sargus, Jr.
**EDMUND A. SARGUS, JR.**
**UNITED STATES DISTRICT JUDGE**

15